IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Eugene Division

SHELLEY ZUMWALT,                              )
                                              )
             Plaintiff,                       )
                                              )                6:13-CV-00075-JO
      v.                                      )
                                              )
CAROLYN W. COLVIN, Acting Commissioner of )                    OPINION AND ORDER
Social Security,                              )
                                              )
             Defendant.                       )

JONES, J.,

Plaintiff Shelley Zumwalt appeals the Commissioner's decision denying her concurrent

applications for disability insurance benefits and supplemental security income under Titles II and

XVI of the Social Security Act.  The court has jurisdiction under 42 U.S.C. § 405(g).  I AFFIRM the

Commissioner's decision.

## PRIOR PROCEEDINGS

Zumwalt alleged disability beginning June 7, 2003, due to fibromyalgia, depression, post

traumatic stress disorder ("PTSD"), stomach problems, asthma, attention deficit hyperactivity

disorder ("ADHD"), anemia, and obesity.  Admin. R. 236.

1 - OPINION AND ORDER

The ALJ applied the sequential disability determination process described in 20 C.F.R.
sections 404.1520 and 416.920. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The ALJ found
that Zumwalt's ability to perform basic work activities was adversely affected by the combined
effects of fibromyalgia, obesity, depression, anxiety disorder, and PTSD. Admin. R. 12. The ALJ
found that, despite her impairments, Zumwalt retained the residual functional capacity ("RFC") to
perform sedentary, simple to moderately complex work, involving no climbing and only occasional
postural activities such as stooping or bending, with limited exposure to fumes, dust, gases, extreme
temperatures, humidity, heights, and hazards. Admin. R. 13.

The ALJ determined that Zumwalt remained capable of performing the supervisory nursing
work she had done in the past. Admin. R. 19. In addition, the vocational expert ("VE") testified that
a person having Zumwalt's RFC and work experience could perform the activities required in
sedentary, semi-skilled occupations such as receptionist in a doctor's office and medical clerk,
representing hundreds of thousands of jobs in the national economy. Admin. R. 20, 57. The ALJ
concluded that Zumwalt was not disabled within the meaning of the Social Security Act because she
could perform her past work and, in the alternative, because she could perform other jobs in the
national economy. Admin. R. 19-20.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal
standards and the findings of fact are supported by substantial evidence in the record as a whole. 42
U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Under
this standard, the Commissioner's factual findings must be upheld if supported by inferences

reasonably drawn from the record even if the evidence also supports another rational interpretation. *Batson*, 359 F.3d at 1193; *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

## DISCUSSION

### I.    Claims of Error

The claimant bears the burden of showing that the ALJ erred and that any error was harmful. *McLeod v. Astrue*, 640 F.3d 881, 886-87 (9th Cir. 2011). Zumwalt contends the ALJ improperly discredited her statements, rejected medical opinions, discounted lay witness statements, and failed to consider her obesity. Zumwalt further contends that the ALJ failed to develop the record and improperly limited her testimony at the administrative hearing. She contends these errors were harmful because they prevented the ALJ from assessing her RFC accurately.

### II.    RFC Assessment

A claimant's RFC assessment describes the work-related activities the claimant can still do despite the functional limitations imposed by her impairments. 20 C.F.R. §§ 404.1545, 416.945; Social Security Ruling ("SSR") 96-8p, 1996 WL 374184. The ALJ must assess the claimant's RFC based on all the relevant evidence in the case record, and must resolve conflicts in the evidence. SSR 96-8p, 1996 WL 374184 * 5; *Batson*, 359 F.3d at 1195. Zumwalt challenges the ALJ's factual conclusions regarding her RFC on the grounds that he improperly discredited her statements, the opinions of Divya Sharma, M.D., Paul Rethinger, Ph.D., and Don McFerron, P.M.H.N.P., and the statements of her mother JoAnne Zumwalt.

#### A.    Credibility Determination

In her written application, Zumwalt alleged she was unable to concentrate, complete tasks, recall information, or get along with coworkers due to chronic pain and fatigue. Admin. R. 171, 190.

3 - OPINION AND ORDER

She alleged she could lift and carry ten pounds for short periods and short distances. She could walk about one block and then would have to rest for ten minutes. Zumwalt said she could not follow spoken instructions of more than two steps. She alleged she had been fired from jobs due to problems getting along with coworkers and her boss. Admin. 195-96.

At the administrative hearing, Zumwalt said she could not return to work because she was in tremendous pain and extreme emotional distress. Admin. R. 44. Zumwalt said she could walk approximately 15 minutes, stand for about 10 minutes, and sit for 15 to 20 minutes. She could lift approximately 15 pounds, but if required to lift occasionally throughout the day, she could lift only five pounds. Admin. R. 48-49, 52. If she had a job in which she could alternate between sitting and standing, she could maintain it for about three hours, but then would need to lie down and rest for up to two hours because of emotional and physical fatigue and pain throughout her body. She said she would lose concentration, have difficulty focusing, and become exhausted after two or three hours. Admin. R. 51.

Zumwalt said she would experience a "brain fog" with difficulty concentrating, finding words, and remembering. Admin. R. 52. Three or four days per month, she would be unable to do anything. Admin. R. 53. She had a hard time concentrating on conversations with supervisors and coworkers. She claimed she had been fired from a number of temporary jobs for failing to work at an adequate pace. Admin. R. 54.

The ALJ found that Zumwalt's impairments could reasonably be expected to cause the symptoms she alleged. Accordingly, he limited her RFC to sedentary work involving no more than moderately complex tasks, no climbing, and only occasional postural activities such as stooping or bending. The ALJ found Zumwalt's statements about further limiting effects of her symptoms not

4 - OPINION AND ORDER

credible, particularly, her allegation that she could not perform any kind of work. Admin. R. 13-14.

Under these circumstances, an ALJ must assess the credibility of the claimant's statements regarding the severity of her symptoms. An adverse credibility determination must include specific findings supported by substantial evidence and clear and convincing reasons. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996). The findings must be sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Tomasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

In assessing credibility, an ALJ must consider all the evidence in the case record, including the objective medical evidence, the claimant's treatment history, medical opinions, daily activities, work history, the observations of third parties with knowledge of the claimant's functional limitations, and any other evidence that bears on the consistency and veracity of the claimant's statements. *Tommasetti*, 533 F3d at 1039; *Smolen*, 80 F3d at 1284; SSR 96-7p, 1996 WL 374186, at *5. The ALJ's decision demonstrates that he considered the evidence relating to these factors.

The ALJ pointed out that, contrary to her claims of total disability beginning in June 2003, Zumwalt had earnings exceeding the presumptive level for substantial gainful activity during 2003, 2005, and 2009. Admin. R. 12, 19. 20 C.F.R. §§ 404.1571, 416.971. Zumwalt had earnings in every year following the alleged onset of her disability. Admin. R. 185. Although in some years her earnings did not reach the level of substantial gainful activity, the work activity supported an inference that Zumwalt was not as functionally limited as she claimed. Admin. R. 19. That inference was also supported by the written reports of Zumwalt and her mother regarding her regular

5 - OPINION AND ORDER

activities, which were not so limited as to suggest symptoms as debilitating as Zumwalt claimed. Admin. R. 19.

The ALJ also relied on the opinion of Jon Swift, D.O., who said he would not support Zumwalt's disability claim because she was capable of sedentary work in which she could use her medical skills. Admin. R. 18, 463. The ALJ found that Zumwalt's treatment notes did not support her allegations of debilitating pain and fatigue and her conservative and infrequent psychological treatment did not support her claims of debilitating mental impairments. Admin. R. 19. *See Parra v. Astrue*, 481 F3d 742, 750-51 (9th Cir. 2007) (Treatment that is conservative or minimal supports an adverse inference as to the claimant's credibility regarding the severity of symptoms).

Zumwalt does not challenge the foregoing reasons for the ALJ's credibility determination. She contends only that the ALJ improperly rejected her testimony that she had been fired from past jobs because she could not keep pace, had difficulty in relationships with coworkers and supervisors, and was physically unable to work extra hours due to pain. Admin. R. 54. The ALJ considered this testimony but found no evidence of the specific reasons her employment was terminated. Admin. R. 14, 408. Zumwalt did not produce performance evaluations or work records from these employers and the evidence suggested that the jobs ended due to their temporary nature.

The ALJ's reasoning for his adverse credibility finding is clear and sufficiently specific for me to conclude that he did not discount her statements arbitrarily. *Carmickle*, 533 F.3d at 1160; *Tomasetti*, 533 F.3d at 1039. His credibility finding provides an adequate basis to discount Zumwalt's claims regarding the reasons her past work ended.

///

///

6 - OPINION AND ORDER

## B.    Medical Opinions

In April 2010, Divya Sharma, M.D., became Zumwalt's primary care provider; she managed Zumwalt's medications for generalized diffuse pain and depressive symptoms and treated matters of routine care. Admin. R. 15, 577-78. In December 2011, Dr. Sharma signed a letter written by Zumwalt's attorney describing Zumwalt's functional limitations. The letter said that, due to obesity and fibromyalgia, Zumwalt could lift no more than ten pounds occasionally and less than five pounds frequently. In addition, she could not handle objects or reach even on an occasional basis. Admin. R. 16, 725. Under the regulations, "occasionally" means up to one-third of the workday, and "frequently" means between one-third and two-thirds of the workday. SSR 83-10, 1983 WL 31251 at *5.

The ALJ gave this letter limited weight. Admin. R. 17. An ALJ can discount the opinion of a treating physician in favor of the opinion of another physician, if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ discounted Dr. Sharma's letter in favor of Dr. Swift's opinion that Zumwalt was not disabled because she remained capable of at least sedentary work. Admin. R. 18, 463.

The ALJ noted that Dr. Sharma's treatment records did not support the extreme limitations described in the letter. Admin. R. 17. Her findings do not suggest extreme limitations in lifting, handling, or reaching. Dr. Sharma did not indicate objective findings or clinical observations supporting such limitations. An ALJ can reject a physician's opinion that is conclusory and unsupported by clinical findings. *Meanal v. Apfel*, 172 F.3d 1111, 1117 (9th Cir. 1999). An ALJ

7 - OPINION AND ORDER

may reject the medical opinion of a doctor whose treatment notes and clinical observations are inconsistent with the doctor's assessment of the claimant's abilities. *Bayliss v. Barnhart*, 427 F.3d 11211, 1216 (9th Cir. 2005).

Zumwalt contends the ALJ improperly discounted the opinion of Paul Rethinger, Ph.D., an agency psychologist who reviewed the case record and said Zumwalt had moderate limitations in social functioning that would make it difficult to interact closely with peers and the public. Admin. R. 68.

The Commissioner relies on psychological consultants to review the record and make findings of fact about the nature of a claimant's impairments and the severity of the functional limitations they impose. 20 CFR §§ 404.1527(f), 416.927(f); SSR 96-6p. Such reviewing sources do not treat or examine the claimant. Therefore, their opinions are held to stricter standards and are given weight only to the extent they are supported by the record and consistent with the record as a whole. SSR 96-6p. The ALJ is not bound by the findings of reviewing consultants, but may not ignore their opinions and must explain the weight given to the opinions in their decision. *Id.*

The ALJ did not ignore Dr. Rethinger's opinion, but determined it was entitled to less weight because it was not consistent with the record as a whole. Instead, it was premised on Zumwalt's subjective statements regarding her inability to get along with others in the work place. Admin. R. 18. The ALJ found these subjective statements lacked credibility for the reasons described previously. A physician's opinion that is premised on the claimant's subjective statements is no more credible than the statements upon which it relies. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989). The ALJ found Dr. Rethinger's opinion inconsistent with Zumwalt's recent work history which showed she had the ability to work

8 - OPINION AND ORDER

closely with peers and the public. Admin R. 18. I conclude that the ALJ's interpretation of the

record is reasonable and find no error in his evaluation of Dr. Rethinger's opinion.

Zumwalt contends the ALJ improperly discounted the opinion of Don McFerran, a

psychiatric-mental health nurse practitioner. McFerran had two counseling sessions with Zumwalt

in May and June 2010. Admin. R. 611. In November 2011, McFerran signed a letter drafted by

Zumwalt's attorney which said Zumwalt's ability to maintain concentration and attention would be

markedly impaired for part of the workday, her ability to maintain a consistent work pace would be

moderately impaired, and it would be reasonable to expect her to miss two or more days per month

due to PTSD and dysthymic symptoms. Admin. R. 728-29.

The ALJ gave McFerran's opinion reduced weight. Admin. R. 18. As the ALJ correctly

noted, nurse practitioners are  not "acceptable medical sources" within the meaning of the

regulations. 20 C.F.R. §§ 404.1513, 416.913. The opinions of such sources must be considered,

but may be discounted if the ALJ provides reasons that are germane to the witness for doing so.

*Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir.

2001).

The ALJ found McFerran's opinion entitled to diminished weight because it was presented

in a conclusory form, drafted by Zumwalt's attorney, without supporting clinical observations or

objective findings. *Meanal v. Apfel*, 172 F.3d at 1117. In addition, McFerran indicated that he had

only seen Zumwalt twice and had not had the opportunity to begin an in depth history or to formulate

a complete diagnosis. Admin. R. 18, 611. A health care provider's opinion may be given less

weight if he has not seen the patient long enough to have obtained a longitudinal picture of the

patient's impairments and presents no support for the opinion. *Holohan v. Massanari*, 246 F.3d

9 - OPINION AND ORDER

1195, 1202 (9th Cir. 2001). These circumstances support the inference that McFerran simply accepted Zumwalt's subjective description of her limitations, which the ALJ found to lack credibility. *Tonapetyan*, 242 F.3d at 1149. The ALJ's reasons for giving McFerran's opinion diminished weight are germane and provide an adequate basis for his conclusion. *Molina*, 674 F.3d at 1111.

### C.    Lay Witness Statements

Zumwalt contends the ALJ improperly discounted part of her mother's written third-party function report. Specifically, Zumwalt contends the ALJ failed to consider her mother's statement that, while working, Zumwalt had difficulty getting along with coworkers and maintaining concentration. Pl.'s Br. 16, 251-58. The ALJ considered the third-party function report. He found that the activities Zumwalt's mother described showed that Zumwalt could regularly engage in fairly normal activities consistent with her RFC assessment for sedentary exertion involving simple to moderately complex tasks. Admin. R. 19.

The ALJ did not separately address the statements about Zumwalt's alleged difficulty with coworkers and concentration at work. There is no evidence that Zumwalt's mother observed Zumwalt while she worked. This supports the reasonable inference that her statements regarding Zumwalt's difficulties at work were premised on Zumwalt's subjective complaints. Accordingly, the statements do not appear to have probative value to add to Zumwalt's own statements. An ALJ is not required to discuss evidence that lacks probative value. *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

In addition, the ALJ's finding that Zumwalt's subjective statements lacked credibility applies equally to the statements of her mother. The ALJ found that Zumwalt's ability to engage in

substantial gainful activity during the period for which she claims disability contradicted her claim

that she cannot get along with coworkers or maintain sufficient concentration to work. Because the

same evidence discredits the similar statements of Zumwalt's mother, any error in failing to discuss

the similar statements was harmless. *Molina*, 674 F.3d at 1122.

### D.   Obesity

Zumwalt contends the ALJ failed to explain with sufficient specificity which of her

restrictions were attributable to obesity. Pl.'s Br. 20-21. The ALJ considered the medical evidence

of Zumwalt's obesity. Zumwalt carried a diagnosis including chronic obesity while she was treated

by Patricia Nibler, M.D Admin. R. 12, 14, 342. Dr. Swift also diagnosed morbid obesity, noting

Zumwalt was resistant to take medications that she thought might cause her to gain weight. Admin.

R. 14, 384-87. Joel Moore, M.D., noted her obesity, but Zumwalt refused to be weighed. Admin.

R. 14, 402-03. Leslie O'Meara, M.D., noted that Zumwalt was obese, standing five feet, two inches

and weighing 276 pounds. Admin. R. 14, 472. Only Dr. Sharma opined that Zumwalt had

limitations from the combined effects of obesity and fibromyalgia. As discussed previously, the ALJ

properly discounted Dr. Sharma's opinion regarding the limiting effects of those impairments.

Admin. R. 17. The ALJ also considered the opinion of Linda Jensen, M.D., an agency reviewing

physician, and found that Zumwalt was more restricted by obesity and fibromyalgia than Dr. Jensen

indicated. Admin. R. 17, 66-67.

Notably, none of the progress notes from treating or examining physicians reflect that

Zumwalt complained of functional limitations attributable to obesity. They did not make clinical

findings of functional restrictions due to obesity. Zumwalt's own function report and hearing

testimony do not indicate impairments attributable to obesity. In other words, Zumwalt has not

11 - OPINION AND ORDER

identified any evidence of limitations from obesity that the ALJ failed to consider. Accordingly, the ALJ properly considered the evidence in the record of functional limitations attributable to Zumwalt's obesity.

## III.    Development of the Record

An ALJ has a duty to assist the claimant in developing the record. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991). The ALJ did so in case, by obtaining medical records, written statements, and testimony from the health care providers and third party witnesses Zumwalt identified. *See Bowen v. Yuckert*, 482 U.S. at 140 n. 5 (claimant is in the best position to provide information about his medical condition and identify sources of such information). In addition, the ALJ obtained and considered the opinions of agency medical and psychological experts regarding the nature of Zumwalt's impairments and the functional limitations they imposed. Admin. R. 17.

An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Despite the extensive medical evidence considered by the ALJ and discussed in his decision, Zumwalt contends the ALJ "relied on no medical evidence to ascertain Plaintiff's RFC" and failed to obtain a consultative evaluation or other evidence. Pl.'s Br. 10, 11. This argument is unpersuasive because the ALJ considered and accounted for all the evidence in the record. His findings are supported by a reasonable interpretation of the evidence and must be upheld. *Batson*, 359 F.3d at 1193; *Andrews*, 53 F.3d at 1039-40. Zumwalt has not shown an ambiguity or other impediment to proper evaluation of the evidence that would require further development of the record. *Mayes*, 276 F.3d at 459-60.

///

12 - OPINION AND ORDER

## IV.    Hearing Proceedings

Zumwalt contends the ALJ prevented her from testifying about her limitations using her hands and fingers. Pl.'s Br. 16-17. Zumwalt testified that she had problems using her hands, arms, and wrists to reach for things and in repetitive movement. She said she would drop things at times and could not lift more than ten pounds. Admin. R. 52. Later, when Zumwalt's attorney returned to the topic of how often she dropped things, the ALJ told him the question was not helpful. Admin. R. 53. Zumwalt contends it was error to curtail the questioning and the error was harmful because her responses would have supported Dr. Sharma's opinion that she could not reach or handle objects even on an occasional basis. Admin. R. 725. Pl.'s Br.16-17.

The ALJ properly managed the hearing and limited testimony that he found repetitive and lacking in credibility. Zumwalt had a full opportunity to be heard regarding her limitations and does not present a persuasive argument that she would have been able to establish additional limitations if the ALJ had permitted further testimony. The ALJ found her testimony to be less than fully credible and discounted the opinion of Dr. Sharma for proper reasons discussed previously. Neither of those findings would have been altered by the additional testimony Zumwalt sought to give. Accordingly, any error in the ALJ's management of the proceedings was harmless. *See Carmickle*, 533 F.3d at 1162-63 and n. 4 (error is harmless when the ALJ's determination remains supported despite the error).

///

///

///

///

13 - OPINION AND ORDER

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

DATED this ___12ᵗ___ day of February, 2014.

                                                     Robert E. Jones, Senior Judge
                                                     United States District Court